**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

|  |  |  |
|---|---|---|
| **DONATO E. PERIA,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-20-0121 |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Donato E. Peria brings this case against Defendant Washington Metropolitan Area Transit Authority ("WMATA"), alleging claims of negligent misrepresentation, breach of contract, falsification of evidence, and violation of due process relating to a random drug test assigned on November 29, 2019. Pending before the Court are the following motions: Defendant's Motion to Dismiss, ECF No. 5; Plaintiff's Motion to Amend Response in Opposition to Motion to Dismiss, ECF No. 17; and Plaintiff's Motion for Leave to File a Surreply, ECF No. 20. These issues have been fully briefed and a hearing is unnecessary. Loc. R. 105.6 (D. Md. 2016). For the reasons that follow, Defendant's Motion to Dismiss is granted, Plaintiff's Motion to Amend is granted, and Plaintiff's Motion for Leave is denied.

1

**I.     BACKGROUND**[1]

Defendant states, and Plaintiff does not dispute, that Plaintiff is an AA Electrical Mechanic employed by WMATA. ECF No. 5-1 at 2.[2] On November 29, 2019, Plaintiff was given a random drug and alcohol test form. ECF No. 6 ¶ 6. Plaintiff alleges that there was no "depart time" listed on the form, that he was told he would have time to get to the testing site, and that he was given "the impression that it was not time sensitive." *Id.* ¶¶ 7–8. Plaintiff "became slack on time," picking up food on the way and not rushing. *Id.* ¶¶ 9, 29. When he arrived at the testing site, he was told he was 16 minutes late, although he was later told it was actually 11 minutes. *Id.* ¶ 10. Plaintiff claims that he was not made aware that, under WMATA's policies, in the event of a random drug and alcohol test, employees are required to cease working immediately and report promptly to the testing site or they will be determined to have refused the test and will incur consequences. *See id.* ¶¶ 25, 29, 33, 37–38. Plaintiff was placed on 180 days suspension without pay due to his failure to appear for the test within a reasonable time. *See id.* ¶ 44.[3]

Defendant alleges, and Plaintiff does not contest, that as an AA Electrical Mechanic employed by WMATA, Plaintiff is a member of Local Union 689 (the "Union"). ECF No. 5-2 at 1. At the time of the November 29, 2019 incident, a collective bargaining agreement was in effect between Local Union 689 and WMATA (the "CBA"). *Id.* The CBA provides for an exclusive dispute resolution process by defining grievance and arbitration provisions. ECF No. 5-2 at 15–16. The process consists of five steps, the first of which is filing a written grievance form with the employee's immediate superior and with the Union. *Id.* Steps 2 through 4 allow for

---

[1] Unless stated otherwise, all facts are taken from Plaintiff's Complaint or documents attached to and relied upon in the Complaint, and are accepted as true.
[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to page numbers generated by that system.
[3] According to Plaintiff's Opposition, the suspension was later reduced to two months. ECF No. 17-1 at 1 n.1.

the Union to act on the employee's behalf to resolve the dispute, but if the Union remains unsatisfied, Step 5 allows it to invoke arbitration in accordance with Section 105 of the CBA. *Id.* Section 105 of the CBA states in relevant part:

> Properly accredited representatives of the Authority shall meet and treat with properly accredited representatives of the Union, on all questions and grievances in accordance with Section 104. Questions or grievances that cannot be amicably adjusted by said conferences shall be submitted to a Board of Arbitration . . . the findings of a majority of said Board of Arbitration to be final and binding.

ECF No. 5-2 at 17–18.

WMATA is a transit authority created by interstate compact among the District of Columbia, Maryland, and Virginia, which was approved by Congress. In Maryland, this compact ("WMATA Compact") is codified as Md. Code. Ann. Transp. §10-204. Section 66(c) of the WMATA Compact requires all labor disputes to be submitted to the grievance process and, if not resolved, submitted to arbitration. It specifically states:

> In case of any labor dispute involving the Authority and such employees where collective bargaining does not result in agreement, the Authority shall submit such dispute to arbitration by a board composed of three persons . . . The determination of the majority of the board of arbitration, thus established shall be final and binding on all matters in dispute . . . The term "labor dispute" shall be broadly construed and shall include any controversy concerning wages, salaries, hours, working conditions, or benefits including health and welfare, sick leave, insurance or pension or retirement provisions but not limited thereto, and including any controversy concerning any differences or questions that may arise between the parties including but not limited to the making or maintaining of collective bargaining agreements, the terms to be included in such agreements, and the interpretation or application of such collective bargaining agreements and any grievance that may arise and questions concerning representation. Each party shall pay one-half of the expenses of such arbitration.

Md. Code Ann. Transp. § 10-204(66)(c).

Defendant alleges, and Plaintiff does not dispute, that neither Plaintiff nor the Union have filed any grievance or initiated arbitration related to the November 29, 2019, drug and alcohol test described in Plaintiff's Complaint. ECF No. 5-2 at 3; *see also* ECF No. 17-2 at 7–8.

Plaintiff filed a Complaint in the Circuit Court of Maryland for Prince George's County on December 9, 2019, alleging eight counts of breach of contract. ECF No. 6. Plaintiff reframes certain claims in his Opposition. *See* ECF No. 17-2 at 12–25. Liberally construing Plaintiff's claims, the Court understands Plaintiff has made allegations of negligent misrepresentation, breach of contract, falsification of evidence, and violation of due process. *See id*. Defendant removed the case to this Court on January 15, 2020, ECF No. 1, asserting this is a civil action over which this Court has original jurisdiction, pursuant to the WMATA Compact, *see* Md. Code. Ann. Transp. §10-204(81) (granting original jurisdiction over suits against WMATA to the United States District Courts); 28 U.S.C. § 1331. Defendant further moved to dismiss the Complaint for lack of subject-matter jurisdiction. ECF No. 5. Plaintiff filed a response on February 7, 2020, ECF No. 16, and an amended response on February 13, 2020, ECF No. 17. Defendant filed a reply on February 18, 2020. ECF No. 18. On March 23, 2020, Plaintiff moved for leave to file a surreply, ECF No. 20, which Defendant opposed on March 31, 2020, ECF No. 21. On April 20, 2020, Plaintiff filed a reply in support of its motion for leave. ECF No. 22.

**II.     PRELIMINARY ISSUES**

Although not chronological, the Court will first address Plaintiff's Motion to Amend Response in Opposition to Motion to Dismiss, ECF No. 17, and Plaintiff's Motion for Leave to File a Surreply, ECF No. 20. On February 13, 2020, six days after filing his Response in Opposition to Defendant's Motion to Dismiss, Plaintiff moved to amend the Response. ECF No. 17. The only change made to the filing was the addition of an appendix identifying the attached exhibits. *Cf.* ECF No. 16-1 *with* ECF No. 17-2. Defendant does not object to Plaintiff's Motion to Amend. ECF No. 18 at 1 n.1. Plaintiff's motion is granted.

Plaintiff later moved for leave to file a surreply to Defendant's Reply in Support of its Motion to Dismiss, ECF No. 20, which Defendant opposed, ECF No. 21. "As a general rule, this Court will not allow parties to file sur-replies." *See Nicholson v. Volkswagen Grp. of Am., Inc.*, No. CIV.A. RDB-13-3711, 2015 WL 1565442, at *3 (D. Md. Apr. 7, 2015) (citing Local Rule 105.2(a) (D. Md.)); *see also Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 351 (D. Md. 2015) ("Surreplies are highly disfavored in this District."). "A party moving for leave to file a surreply must show a need for a surreply." *MTB Servs., Inc. v. Tuckman-Barbee Const. Co.*, No. 1:12-cv-02109-RDB, 2013 WL 1224484, at *6 (D. Md. Mar. 26, 2013). The court may permit a plaintiff to file a surreply if "a defendant raises new legal issues or new theories in its reply brief," *id.* (citing *TECH USA. Inc. v. Evans*, 592 F.Supp.2d 852, 862 (D.Md. 2009)), and "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply," *id.*; *see also Khoury v. Meserve*, 268 F. Supp. 2d 600, 605–06 (D. Md. 2003). However, "[a] motion for leave to file a surreply may be denied when the matter addressed in the reply is not new." *Marshall v. Capital View Mut. Homes*, No. RWT–12–3109, 2013 WL 3353752, at *3 (D. Md. July 2, 2013); *see also Dones v. Brennan*, 147 F. Supp. 3d 364, 373 (D. Md. 2015) (denying motion for leave to file a surreply where "it appears that 'Plaintiff[ ] seek[s] merely to re-open briefing on the issues raised.'") (quoting *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460, 467 (D. Md. 2008)). Here, Defendant's Reply did not assert new facts or raise new issues that could not have been anticipated beforehand. Indeed, Plaintiff's proposed surreply addresses several arguments made in Defendant's Reply as "redundant" and "already [] answered by the Plaintiff" in his Response, undercutting his arguments in favor of leave. ECF No. 20-1 at 2, 4. Plaintiff's Motion for Leave to File a Surreply is denied.

## III. MOTION TO DISMISS

### A. Standard of Review

Defendant WMATA contends that Plaintiff's Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff failed to exhaust the CBA's grievance procedures mandated under the WMATA Compact, and therefore the Court lacks subject-matter jurisdiction over the claim. *See* ECF No. 5-1 at 1.

The Court must first determine whether failure to exhaust the grievance procedures is truly a jurisdictional question, rather than an affirmative defense or an element of Plaintiff's claim. The Supreme Court has acknowledged, "[o]n the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006); *see also Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361 (2d Cir. 2000) (noting that "whether a disputed matter concerns jurisdiction or the merits (or occasionally both) is sometimes a close question" that courts "often obscure"). The "starting presumption" is that "when jurisdiction is conferred, a court may not decline to exercise it." *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 71 (2009). However, "Congress may make other prescriptions jurisdictional by incorporating them into a jurisdictional provision" or by leaving "undisturbed" a "long line" of Supreme Court decisions "attach[ing] a jurisdictional label to the prescription." *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019) (internal citations and quotation marks omitted); *see also Arbaugh*, 546 U.S. at 515 (finding Congress can rebut the presumption of jurisdiction if it "clearly states that a threshold limitation on a statute's scope shall count as jurisdictional"). Therefore, "[a] statutory condition that requires a party to take some action before filing a lawsuit is not automatically 'a *jurisdictional* prerequisite to suit.'" *Reed Elsevier,*

*Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982))(emphasis in *Reed*). Indeed, as the Supreme Court explained in *Reed*, it has "treated as nonjurisdictional" other pre-filing exhaustion requirements. *Id.* at 166 & n.6 (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)); *see, e.g.*, *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019).

The Fourth Circuit, considering a similar question—whether the judicially mandated exhaustion requirement in the Labor Management Relations Act is a jurisdictional precondition to suit—concluded it was not, as (i) Congress had not clearly stated it was jurisdictional and (ii) the Supreme Court's equitable exceptions to the requirement indicate it is a prudential limit, as "the Court has 'no authority to create equitable exceptions to jurisdictional requirements.'" *Staudner v. Robinson Aviation, Inc*., 910 F.3d 141, 147 (4th Cir. 2018) (citing *Bowles v. Russell*, 551 U.S. 205, 214 (2007)).[4] As in *Staudner*, the WMATA Compact does not clearly state that exhaustion of the grievance procedures is jurisdictional. Therefore, the Court finds the exhaustion requirement to be nonjurisdictional and will construe Defendant's motion as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Carpenter v. Virginia Dept. of Transp.,* No. 5:06cv35, 2006 WL 3314436, at *2 (W. D. Va. Nov. 14, 2006) (construing a 12(b)(1) motion associated with an EEOC exhaustion claim as a 12(b)(6) motion based on the court's conclusion that the issue in that case was not jurisdictional); *Reid v. Prince George's County Bd. of Educ.,* 60 F. Supp. 3d 601, at 604 (D. Md. Oct. 8, 2014) (finding that although the defendants appear to rely on Rule 12(b)(1) in seeking dismissal due to untimeliness of the complaint, "such a challenge is made pursuant to Rule 12(b)(6), not 12(b)(1)"); *Nowak v.*

---

[4] The Fifth Circuit came to the opposite conclusion, but grounded its finding in a line of Supreme Court cases addressing that specific provision. *Nat'l Football League Players Ass'n v. Nat'l Football League*, 874 F.3d 222, 227 (5th Cir. 2017).

*Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187–88 (2d Cir. 1996) (construing the district court's dismissal of an ERISA claim for lack of subject matter jurisdiction as "a dismissal for failure to state a claim upon which relief can be granted under [Rule] 12(b)(6)").

To survive a motion to dismiss invoking Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must be more than "labels and conclusion . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555; *see also id.* ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action" (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, 235–36 (3d ed. 2004)). A complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *See id.* at 679 (citing Fed. Rule Civ. Proc. 8(a)(2)). Federal courts have an "obligation to liberally construe a pro se [c]omplaint" and may consider additional facts and information supporting the complaint that is provided in an opposition to a motion to dismiss. *Rush v. Am. Home Mortg., Inc.*, 2009 WL 4728971, at *3 (D. Md. Dec. 3, 2009).

### B. Discussion

Under the CBA, Plaintiff was required to engage in a five-step grievance process culminating in arbitration. Plaintiff does not dispute that he failed to do so, arguing that it would have been impossible. *See* ECF No. 17-2 at 7–8. "The rule of the Supreme Court and this circuit is that an employee must follow the grievance procedure established by the collective bargaining agreement prior to filing suit in federal court." *Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 885 (4th Cir. 1996). The Supreme Court has further noted:

> A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. In addition to cutting across the interests already mentioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement.

*Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965). Additionally, the D.C. Circuit has determined, "under settled law the WMATA employees who failed to exhaust the grievance and arbitration proceedings, available to them, may not seek redress in court on claims that could and should have been grieved." *Sanders v. Washington Metro. Area Transit Auth.*, 819 F.2d 1151, 1158 (D.C. Cir. 1987).[5]

Plaintiff counters in his Opposition that exhausting the grievance and arbitration process would have been futile, as the Union would not have advocated for him in the process based on a drug and alcohol-related sanction. ECF No. 17-2 at 7–8. Plaintiff relies on a statement that the Union had not taken a positive drug test to arbitration in 18 years as of April 2017.[6] *Id.* at 4; ECF No. 17-3. Plaintiff further alleges that a co-worker approached the Union concerning a drug and

---

[5] "When addressing the WMATA Compact, the Fourth Circuit looks to the District of Columbia Circuit for interpretive aid, striving to maintain consistency between the only two federal circuits likely to preside over WMATA Compact issues." *Hutcherson v. WMATA.*, CIV. 08-3044-RWT, 2009 WL 2168998, at *3 (D. Md. July 16, 2009).

[6] Plaintiff asserts that they still have not done so. *See* ECF No. 17-2 at 4.

alcohol refusal-to-test finding and was told the union does not accept drug and alcohol-related grievances. ECF No. 17-2 at 4 n.2.

The futility exception to the exhaustion requirement is "quite restricted." *Comm. of Blind Vendors of D.C. v. D.C.*, 28 F.3d 130, 133 n.5 (D.C. Cir. 1994). Courts have generally required that a plaintiff attempt to engage in the grievance process in order to show that exhaustion was futile. *See, e.g.*, *Perry v. Midstates Independent Union*, 20 Fed. App'x. 527, 531 (7th Cir. 2001) ("[A]n employee's speculation that it would be futile to file a grievance is insufficient to excuse the employee's failure to exhaust. . . . Rather, the employee must put the grievance procedure to the test, . . . for example, by filing repeated complaints to company and union officials.") (internal citations and quotations omitted); *Parham v. Carrier Corp.*, 9 F.3d 383, 390–91 (5th Cir. 1993) (finding that to bring a suit without first exhausting available grievance procedures, "an employee may not simply assert that his use of grievance procedures would have been futile: he must ordinarily at least have attempted to use them."); *Fizer v. Safeway Stores, Inc.*, 586 F.2d 182, 184 (10th Cir. 1978) (futility not shown where employee "never actually filed charges . . . and therefore never gave the system a chance to work"). Only in limited circumstances, not applicable here, have courts found the grievance process futile without a showing that the plaintiff attempted to engage in it. *See, e.g.*, *Glover v. St. Louis-San Francisco Railway Co.*, 393 U.S. 324 (1969).

Here, Plaintiff never approached the Union, and the allegations in the Complaint, even if accepted as true, do not establish futility. That the Union has not engaged in arbitration related to a positive drug test does not render an attempt legally futile. Moreover, Plaintiff's assertion concerning an individual experience of a co-worker is insufficient to show that approaching the union would have been "clearly useless," *Randolph-Sheppard Vendors of Am. v. Weinberger*,

795 F.2d 90, 105 (D.C. Cir. 1986), or that the union certainly would not have pursued Plaintiff's claims, *see Smith v. Blue Cross & Blue Shield*, 959 F.2d 655, 659 (7th Cir. 1992) ("In order to come under the futility exception, [plaintiffs] must show that it is certain that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision."). Indeed, the Tenth Circuit found plaintiffs' claims insufficient where they claimed "their coworkers told them not to bother . . . because the union would not process them." *Liles v. Washington Tru Solutions, LLC*, 303 Fed. Appx. 576, 579 (10th Cir. 2008). Therefore, the Court finds Plaintiff failed to allege facts showing that he exhausted his remedies or that doing so would have been futile. Plaintiff's Complaint must be dismissed.[7]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend is granted, Plaintiff's Motion for Leave shall be denied, and Plaintiff's Complaint will be dismissed. A separate Order follows.

Dated: September 28, 2020

/s/
GEORGE J. HAZEL
United States District Judge

---

[7] Defendant also moved to dismiss Plaintiff's claims under Rule 12(b)(1), arguing, "[t]o the extent this Court construes any of Plaintiff's claims to not be encompassed by the collective bargaining agreement and the WMATA Compact, WMATA possesses governmental immunity." ECF No. 18 at 3–5. Having determined that Plaintiff failed to exhaust the grievance and arbitration procedures, the Court need not consider which of Plaintiff's claims are covered by Defendant's sovereign immunity.